A. C. KEATING, *Appellee*, V. THE MUTUAL LAUNDRY COMPANY, *Appellant.*

No. 18,268.

### SYLLABUS BY THE COURT.

CORPORATION—*Contract for Employee's Stock—Included no Adjustment of Employee's Salary.* The salary of an officer in a corporation was fixed at a stated sum, with an addition of a percentage of its gross receipts in excess of a certain amount; for several years the business of the company was such as to entitle him to this percentage, but he did not draw it, nor ascertain what it amounted to; in negotiations with other stockholders which led to the sale to one of them of his stock he was asked how much salary was owing him; he answered by giving the amount due on the basis of what he had been drawing; a memorandum was made stating that he was to receive what salary was due him, and pay back any excess if he was overdrawn, and that he was to have no claim against the assets of the company. *Held,* that he was not thereby precluded from claiming from the company the additional salary he had earned, the trial court having found upon sufficient evidence that his statement as to the salary owing him was intended to refer to the amount due on the basis of his fixed rate, and was so understood by the buyer, and that the stipulation regarding the assets of the company had reference to a controversy as to whether the buyer or seller should be entitled to dividends already earned but not declared.

Appeal from Shawnee district court, division No. 2. Opinion filed June 7, 1913. Affirmed.

*Joseph G. Waters,* and *John C. Waters,* both of Topeka, for the appellant.

*Leonard S. Ferry, Thomas F. Doran,* and *John S. Dean,* all of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: In 1905 A. C. Keating became the owner of 590 shares of the stock of the Mutual Laundry Company, a corporation. He was made vice president and

treasurer, and an arrangement was entered into by which he was to devote all of his time to the service of the company, and to receive a salary then fixed by action of the directors. Prior to January 28, 1910, personal differences arose between Keating on the one hand and R. Matthews and C. H. Matthews on the other, they together owning 698 shares, being practically all the rest of the stock. As a result it became apparent that a change would have to be made in the management of the business, if not in its ownership. On that day the parties met and Keating offered to buy the stock of the others at $17.50 a share. This offer was refused, and a counter proposition was made to pay him $10 a share for his stock, accompanied by an intimation that if he did not accept he would be removed from connection with the management of the company. He accepted and a sale was made on that basis. A memorandum of the agreement was made. Shortly after the completion of the deal Keating demanded of the company several hundred dollars, which he alleged to be owing to him as unpaid salary. Payment being refused, he brought action on the claim, and recovered a judgment, from which the company appeals.

The defendant maintains that the contract made between Keating and the Matthews included a settlement of all claims on his part against the company, and argues that such an agreement can not be set aside merely because one of the parties overlooked something or made a mistake of fact against himself. This legal proposition is not controverted. The question involved is whether the evidence conclusively showed that a settlement was affected which covered the claim sued upon, the trial court having found to the contrary. The memorandum referred to did not upon its face indicate the adjustment of a demand for salary. In fact, it

seemed expressly to negative such an adjustment. It read:

"Cash payable at 1:30 P. M. this day. Keating to be given his salary, including to-day. If it is overdrawn he to pay back. On sale he is to have no claim on anything, credits, supplies or other assets of co. & the differences are then considered adjusted."

The concluding sentence, considered by itself, would be sufficient to cut off claims against the company of every character, but it yields to the more explicit statement that the plaintiff's salary was to be paid, and that if overdrawn the excess was to be refunded. The writing as a whole indicates that the amount due Keating as salary was not adjusted. By its terms, if he had been found to be overpaid to the extent of several hundred dollars he would have been compelled to make restitution. The reference to a claim upon the assets of the company is explained by the fact that Keating contended that even if he accepted the offer of $10 a share for his stock he would still be entitled to a portion of the undivided profits then on hand, amounting to about $1500. The contention that the claim for salary was included in the settlement necessarily rests for its support upon oral evidence. During the negotiations the attorney of the Matthews stated, in substance, that if the sale of the stock was made the transaction was to "clear the sky" and leave nothing for future adjustment or claim, and this was assented to by Keating. But the trial court specifically found that this was said with reference to the previous claim of Keating to a share in the accumulated profits, and was so understood by all the parties. It also appears from the defendant's answer that in the discussion it was agreed that if time was given on the payment for the stock "R. Matthews and C. H. Matthews should be entitled to all dividends accruing or that had accrued to the stock of the plaintiff." The evidence seems to justify the finding that the matters in controversy, to settle which the con-

cluding sentence was added to the agreement, had relation to the disposal of dividends earned but not declared prior to the time Keating sold his stock and received payment for it.

The motion by the adoption of which Keating's salary was fixed read:

"C. H. Matthews as manager and A. C. Keating as vice-president and treasurer, in consideration of the fact that they devote their entire time to the service of the company, shall each receive as a salary for said services $20 per week for the first $300 gross receipts of this company per week, with an additional four per cent for each and every dollar of business per week done by the company up to $500 per week. No further increase of salary shall be allowed to said C. H. Matthews and A. C. Keating until the earnings of the company are sufficient to pay to the stockholders seven per cent per annum upon the stock, when said salaries shall be increased to five per cent instead of four per cent upon all amounts above said original $300 per week."

From April 1, 1907, up to the time the stock was sold, the earnings of the company were sufficient to pay seven per cent dividends, and such dividends were actually paid. Keating and C. H. Matthews had habitually drawn, in addition to the flat rate of $20 a week, four per cent of the receipts up to $500, but at the time of the settlement neither had ever drawn any part of the additional one per cent to which they had been entitled for nearly three years. In the discussion leading up to the sale of the stock Keating was asked by the attorney for the Matthews how much salary was due him, and answered that it would be about twenty-five or thirty dollars. The court found, however, that Keating meant, and was understood by the other parties to mean, that that would be the balance due him on the basis of what he had actually been drawing. The court also found that none of the parties thought anything about the additional one per cent at the time; that the next day it occurred to Keating that he had never re-

ceived it; that he did not know how much it would amount to without examining the books and making a computation; that in the afternoon he did this and demanded payment of the company of the amount found to be due him.

We do not think these findings, or the evidence on which they are based, compel the conclusion that the claim for additional salary was barred. There was no room for any disagreement as to the total amount of salary Keating had earned, and there was no disagreement in fact as to how much he had received; there was no actual controversy on the subject and no actual settlement. The negotiation was not between the company and Keating as to how his account stood, but between the Matthews and Keating with reference to the purchase of stock in the company. The controversy as to a claim of Keating against the assets of the company did not relate to a demand against the company for services, or for anything else; it had to do merely with the question as to who, as between buyer and seller, would be entitled to dividends already earned, but not declared.

Of course, the question of how much the company owed Keating was material in agreeing upon a price to be paid for his stock. If he misrepresented the amount, a buyer who relied upon his statement would have the right to rescind the contract, or to have the price abated, not by the full amount of the understatement, but according to its effect upon the value of the stock purchased. If Keating had purposely misstated the sum due on his salary and the Matthews had been misled, he would doubtless be estopped from now claiming a larger amount. But the court found that there was no purpose to deceive, and no actual deceit. The parties all knew how the salary was fixed. There is no serious contention that Keating misled any one, either as to the gross receipts of the business or as to the total

amount he had drawn. And in any event the Matthews did not deal with him on the basis that his statement of the amount due was necessarily correct, as conclusively appears from the insertion in the memorandum of the stipulation that if he was overdrawn he must account for the excess.

The judgment is affirmed.